IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:17CR250 |
| vs. | FINDINGS AND RECOMMENDATION |
| LUIS ELIAS, | |
| Defendant. | |

This matter is before the Court on the Motion to Suppress the Fruits of an Unlawful Search and Seizure (Filing No. 18) filed by Defendant, Luis Elias.  Defendant filed a brief in support of the motion (Filing No. 19) and the government filed a brief in opposition (Filing No. 24).

The Court held an evidentiary hearing on the motion on May 2, 2018.  Defendant was present with his attorney, Michael F. Maloney.  The government was represented by Assistant United States Attorney, Kimberly Bunjer.  Nick Greiner, a Detective with the Bellevue, Nebraska Police Department testified on behalf of the government.  The Court received into evidence, without objection, Exhibits 1 (booking photographs of Defendant) and 2 (audio-visual recording from police vehicle camera) offered by the government.  A transcript (TR.) of the hearing was prepared and filed on May 12, 2018. (Filing No. 30).  This matter is now fully submitted to the Court.  For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be granted.

BACKGROUND

Detective Nick Greiner ("Det. Greiner") has been in law enforcement for eight and a half years—three with Cass County Sheriff's Office in Nebraska and five with his current employer, Bellevue Police Department.  (TR. 4-5).  At approximately 12:30 p.m. on June 28th, 2017, Det. Greiner was performing a dayshift road patrol of a residential neighborhood in north Bellevue when he recognized a Pontiac Firebird belonging to Michael Beltran ("Beltran") and commonly driven by Selena Hansen ("Hansen") parked in the driveway of an unknown residence.  (TR. 7).

Det. Greiner previously had received information from officers that the Firebird had been involved in drug activity. (TR. 15).

While driving by the residence the first time, Det. Greiner ran a records check of the Firebird's license plates, which showed it belonged to Beltran. (TR. 5, 15). Det. Greiner had no information associating the residence with Beltran and Hansen. (TR. 23). Det. Greiner then ran a records check for Beltran and Hansen and confirmed with dispatch that they appeared to have active warrants. (TR. 6, 16). Beltran's was a misdemeanor warrant for interference with a public service. (TR. 19). Det. Greiner also had pictures and physical descriptions of Beltran and Hansen at his disposal on the computer in his cruiser. (TR. 16). Beltran's physical description was five-foot-nine-inches and-two hundred pounds. (TR. 20).

While driving by the residence a second time, Det. Greiner noticed two Hispanic males and a white female standing by the residence. (TR. 6-7, 17). Det. Greiner testified that he did not get a good look at the individuals. (TR. 18). Nonetheless, Det. Greiner suspected that these individuals were Beltran and Hansen. (TR. 19). Det. Greiner called in backup from Sergeant Derrick Bees ("Sgt. Bees").

After passing the residence a third time, Det. Greiner and Sgt. Bees parked their patrol cars two or three blocks away and approached the residence by foot. Det. Greiner did not know if Hansen or Beltran were actually there. (TR. 21). As the officers approached, Det. Greiner saw a "tall skinny" Hispanic male standing near the porch of the residence, a white female sitting in the front passenger seat of the Firebird, and a Hispanic male, later identified as Defendant, sitting in the front driver's seat of the Firebird. (TR. 8, 20). As Det. Greiner approached the residence, Defendant got out of the driver's seat and made his way to the open trunk of the Firebird. Det. Greiner noticed what he believed to be gang-related tattoos on Defendant. (TR. 8-9,11). Det. Greiner called out and identified himself as a police officer as Defendant searched through the trunk. (TR. 8-9). Defendant then looked at Det. Greiner and continued to search the trunk. After Det. Greiner called out a second time, Defendant moved from the trunk. Neither Beltran nor Hansen were at the residence. (TR. 21, 26).

After Defendant moved from the trunk, Det. Greiner saw that Defendant was five-foot-three-inches and one-hundred and fifteen pounds, a stark difference from Beltran's larger frame. Det. Greiner proceeded with a pat-down search of Defendant. (TR. 9). Det. Greiner decided not to conduct the frisk of Defendant in front of his cruiser camera and he did not engage his

2

microphone. (TR. 24). Det. Greiner found a plastic baggie filled with a clear crystalized substance he believed to be methamphetamine in Defendant's right pocket. Det. Greiner then placed Defendant in handcuffs, detained him, and requested assistance from Officer Jordan Spencer ("Ofc. Spencer"). Det. Greiner and Ofc. Spencer placed Defendant in the back of Ofc. Spencer's patrol car, read Defendant his *Miranda* warnings, and performed a field test of the substance. (TR. 9-10). Defendant identified himself sometime after being handcuffed, but Det. Greiner did not specify if it was before or after the *Miranda* warnings. Det. Greiner questioned Defendant. (TR. 12). Defendant admitted that the substance was methamphetamine, that the Firebird belonged to him, and that some of the contents inside the Firebird belonged to him. Det. Greiner and Ofc. Spencer searched the Firebird. (TR. 13). Det. Greiner and Ofc. Spencer found a firearm and two glass bongs commonly used for smoking marijuana. After questioning Defendant about the firearm, the officers took him to the Sarpy County jail for booking. (TR. 13-14).

Defendant has filed the instant motion to suppress all evidence obtained as a result of Det. Greiner's frisk, arguing the frisk was unconstitutional because it was not supported by reasonable suspicion that Defendant was armed and dangerous. (Filing No. 19 at pp. 4-7).

## ANALYSIS

Defendant argues that the evidence in this case should be suppressed because it resulted from a frisk unsupported by reasonable suspicion that he was armed and dangerous. (Filing No. 19 at p. 4). The undersigned magistrate judge agrees with Defendant that the totality of the circumstances did not support reasonable suspicion for a frisk of Defendant, and therefore finds the frisk was unconstitutional.

Under the Fourth Amendment, "[l]aw enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citing *Terry v. Ohio,* 392 U.S. 1, 25-31 (1968)). "'After a suspect is lawfully stopped, an officer may in some circumstances conduct a frisk search for weapons' if the officer has 'reasonable, articulable suspicion that the suspect is armed and dangerous.'" *United States v. Roelandt*, 827 F.3d 746, 748 (8th Cir. 2016) (quoting *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015)). "In the case of a self-protective search for weapons, [an officer] must be able to point to particular facts from which he

3

reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64 (1968) (citing *Terry*, 392 U.S. at 21). Reasonable suspicion cannot be based on an officer's hunch. *Terry*, 392 U.S. at 22. Instead, "Reasonable suspicion is determined by 'look[ing] at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing [based on his] own experience and specialized training to make inferences from and deductions about the cumulative information available.'" *United States v. Dillard*, 825 F.3d 472, 474 (8th Cir. 2016) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

In this case, the undersigned magistrate judge finds that the totality of circumstances did not support reasonable suspicion and the subsequent frisk of Defendant. Det. Greiner gave three reasons for initiating the frisk: the high risk-nature of checking people with felony arrest warrants; the fact that Defendant continued searching his trunk and ignored Det. Greiner upon his first approach; and Det. Greiner's belief that Defendant's tattoos were gang-related. (TR. 8-9). These factors, taken together, fail to establish reasonable suspicion that Defendant was armed.

Det. Greiner's first reason for the frisk of Defendant was due to the high risk-nature of checking people with felony arrest warrants. Det. Greiner approached the residence under the assumption that Defendant was actually Beltran despite not getting a "good look." See *Terry*, 392 U.S. at 22 (relying on "inarticulate hunches" does not justify stop). Although Beltran did have a warrant under his name, it was not for a felony charge. Instead, the warrant was for a misdemeanor charge of interference with a public service. (TR. 19). Moreover, after Defendant moved from the trunk, Det. Greiner recognized that Defendant was not Beltran. (TR. 22-23). Beltran is a five-foot-nine-inch and two-hundred pound male, and Defendant is a five-foot-three-inch and one-hundred and fifteen pound male. Det. Greiner had access to Beltran's description and recognized that Beltran and Defendant's statures were very different. Det. Greiner had no knowledge of who Defendant was, yet he still initiated the frisk. Cf. *United States v. Sanford*, 813 F.3d 708, 711 (8th Cir. 2016)(considering officer's recognition of defendant from previous encounters including first degree burglary and weapons charges); *Roelandt*, 827 F.3d at 748-49 (finding reasonable suspicion when officer knew defendant was a felon and gang member). Beltran and Hansen had no connection to the residence nor were they present at the residence that day.

Furthermore, there were no other factors that contributed to a sense of "high risk" to support reasonable suspicion. In *United States v. Cornelius*, 391 F.3d 965, 967 (8th Cir. 2004), the court looked at two other factors along with a suspect's past criminal record and active warrants to support reasonable suspicion: the history of criminal activity in the area defendant was located and the defendant's behavior when he became aware of police presence. See also, *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995)(including the factor of time of day or night to determine reasonable suspicion). The record establishes that Det. Greiner was on a 12:30 p.m. day-time patrol in a residential neighborhood, not stated by Det. Greiner to be a high crime area. Det. Greiner did not testify that Defendant or other individuals outside the residence appeared to be involved in any criminal activity. Cf. *United States v. Dillard*, 825 F.3d 472, 473 (8th Cir. 2016) (finding reasonable suspicion when individuals in a high crime area looked like they were about to steal a vehicle); *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015) (loitering in a commercial parking lot known for gangs, narcotics, and violence supported officer's reasonable suspicion). Rather, Defendant was either working on the Firebird, sitting inside of the Firebird, or searching for something in the trunk of the Firebird. There was also no evidence that the group's behavior changed when they became aware of police presence. Cf. *United States v. McGautha*, 2015 WL 9480076, at *2 (W.D. Mo. Dec. 29, 2015) (finding reasonable suspicion when defendant quickly moved to the sidewalk and walked at a faster pace when he noticed a patrol car).

Det. Greiner's second reason for the frisk of Defendant was because Defendant ignored Det. Greiner on his first approach. Det. Greiner called out to Defendant, but Defendant continued to search the trunk. After Det. Greiner called a second time, Defendant moved from the trunk. (TR. 8-9). Though Defendant did not initially cooperate by responding or moving from the trunk, this does not "furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). Most importantly, Defendant did not make any furtive movements for Det. Greiner to suspect that he had a weapon. For example, in *United States v. Robinson*, 2017 WL 6273088, at *1-3 (W.D. Mo. Oct. 11, 2017), police officers approached two men exiting a house known for illegal activity. As officers approached, they witnessed the defendant assault a man and begin to make a furtive motion towards his waistband, where a gun is commonly kept. The court found there was reasonable suspicion supporting the frisk because of the furtive motion. Similarly, in *United*

5


*States v. Davis*, 202 F.3d 1060, 1061 (8th Cir. 2000), a police officer searched a suspect and the suspect's friend made a furtive motion towards the inside of his jacket. The officer frisked the friend because of the furtive motion. In this case, Defendant was simply searching through the trunk as the officer approached. See *United States v. Crawford*, 891 F.2d 680, 682 (8th Cir. 1989)(finding no reasonable suspicion when defendant's conduct was typical of countless innocent people). Unlike these other cases, Defendant made no furtive motions or movements while searching through the trunk which would support a suspicion that he had a weapon. Absent furtive motions, "ignoring" an officer does not support reasonable suspicion.

The final reason Det. Greiner performed a frisk of Defendant was because of Defendant's "gang-related" tattoos. While an officer's experience and knowledge may play a role into what is suspicious, Defendant's tattoos, under the totality of circumstances, do not support reasonable suspicion. *Terry*, 392 U.S. at 6, 23. Appearance alone does not support a finding of reasonable suspicion that a person may be armed. See *United States v. Jones* 606 F.3d 964, (8th Cir. 2010) (finding no reasonable suspicion supporting the frisk of defendant who was walking across a parking lot in a long sweatshirt clutching the front area of his hoodie pocket with his right hand). Again, the residential area where the Firebird was located was not known for being a "high-crime" or gang-related area. Det. Greiner's observation of Defendant's tattoos, without anything else, does not support reasonable suspicion that Defendant was armed and dangerous to justify a frisk.

The government likens the instant case to *United States v. Moorefield*, 111 F.3d 10 (3rd Cir. 1997), wherein the Court of Appeals for the Third Circuit approved the frisk of a non-compliant individual who was in the passenger seat of a vehicle during a traffic stop. The Third Circuit in *Moorefield* concluded the frisk was justified because the individual ignored the officer's instructions to keep his hands in view, he raised and lowered his hands several times, and he leaned back and appeared to shove something down toward his waist. *Id.* at 14. The court concluded that "[the individual's] behavior embodied the kind of specific, articulable facts that *Terry* contemplates and, therefore, warranted a pat-down search for weapons." *Id.*

However, the facts in this case substantially differ from those in *Moorefield*, and do not justify a frisk. First, this case does not involve a traffic stop. Although traffic stops are dangerous encounters that may result in assaults and murders of police officers, see *id.* at 13, here, Det. Greiner was not performing a traffic stop. Rather, Det. Greiner merely approached the

6

Firebird, which was already parked in the driveway of a residence. Additionally, unlike the defendant in *Moorefield*, who repeatedly ignored police orders to put his hands in the air, in this case, Defendant was not ordered to put his hands in the air. Det. Greiner identified himself as a police officer, but did not order Defendant to do anything. Defendant did not ignore any command because Det. Greiner gave no command. Lastly, unlike the defendant in *Moorefield*, who made a clear furtive motion by shoving something toward his waist, Defendant made no clear furtive motion while searching the trunk.

Considering the totality of circumstances, the undersigned magistrate judge finds that Det. Greiner did not have reasonable suspicion that Defendant was armed and dangerous. Because Det. Greiner's frisk was not supported by reasonable suspicion, any evidence and statements subsequently obtained as a result of the frisk were fruit of the poisonous tree and must be suppressed. *Segura v. United States*, 468 U.S. 796, 804 (1984); *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Upon consideration,

**IT IS HEREBY RECOMMENDED** to United States District Court Chief Judge Laurie Smith Camp that Defendant's Motion to Suppress (Filing No. 18) be granted.

Dated this 29th day of May, 2018.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge